

ORDERED in the Southern District of Florida on April 25, 2017.

Raymond B. Ray, Judge
United States Bankruptcy Court

_____

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov
Broward Division

In re:

NELVARE R. SCOTT,                                   Case No. 14-38122-BKC-RBR

    Debtor(s).                                        Chapter 13
_____/

## ORDER DENYING DEBTOR'S AMENDED MOTION TO VACATE [D.E. 147] AND GRANTING CREDITOR'S EMERGENCY MOTION TO ENFORCE [D.E. 87]

THESE MATTERS came before the Court for an evidentiary hearing on March 21, 2017 on Secured Creditor Crossfire Financial Network, Inc.'s *Emergency Motion to Enforce Court Order Compelling Surrender [ECF NO. 84] And For Contempt And Sanctions* [D.E. 87] (Creditor's Motion), Debtor's *Motion for Relief From "Agreed Order Granting Secured Creditor Crossfire Financial Network, Inc's Motion to Compel Debtor to Surrender Mortgaged Property" And For Relief From Any and All Orders or Filings Stating that Debtor Surrenders Homestead Property* [D.E. 101], the Amended Motion

[D.E. 147], and Response [D.E. 145] thereto. After considering the pleadings, hearing argument of the parties, and testimony of Debtor and Attorney, Lydia Quesada, the Court grants Creditor's Motion [D.E. 87] and denies Debtor's Motion [D.E. 147].

## I. FINDINGS OF FACT

Six of Debtor's ten plans provide that Debtor will surrender her homestead property, located at 3601 N. 41 Court, Hollywood, Florida 333021-1994, including Debtor's confirmed Fourth Amended Plan. [D.E. 75 at 1, 71 at 1, 62 at 1, 61 at 1, 52 at 1, 47 at 1]. 1. The remaining four plans explain that Debtor will surrender the homestead property, if Creditor and Debtor fail to reach an agreement during mediation. [D.E. 45 at 2, 41 at 2, 31, at 2, 12 at 2]. On June 16, 2015, Debtor filed the *Final Report of Loss Mitigation/Mortgage Mediation Mediator* [D.E. 46], which indicated that Debtor and Creditor failed to reach an agreement. As a result, Debtor filed the Fourth Amended Plan [D.E. 47] providing that Debtor would surrender the homestead property, and the Court confirmed the Fourth Amended Plan [D.E. 49].

On December 20, 2016, Debtor and Creditor entered an *Agreed Order Granting Motion to Compel* [D.E. 84] (the "Agreed Order"), in which the Court ordered Debtor to surrender her homestead property to Creditor and cease her opposition in state court. Debtor failed to surrender the homestead property and comply with the terms of the Agreed Order [D.E. 84]. Creditor then filed Creditor's Motion [D.E. 87] seeking to enforce the Agreed Order [D.E. 84]. Debtor then sought to vacate the Agreed Order [D.E. 84] on the grounds that Debtor "never agreed to the entry of the 'Agreed Order,' [sic] and she never agreed to surrender her homestead residence." [D.E. 101 at 3; 147 at 3].

The Court held an evidentiary hearing to determine whether Debtor agreed to surrender her homestead property and gave her former attorney, Lydia Quesada, authority to enter into the agreement.

---

1 Initially, Debtor challenged "any and all orders or other documents of record which indicate that Debtor agreed to surrender her homestead property." [D.E. 101 at 1]. This broad language would include any order confirming a Chapter 13 plan that provided that Debtor would surrender her homestead property. Debtor's Amended Motion [D.E. 147] dropped the challenge to the confirmed Chapter 13 plan and limited the Debtor's Motion to Vacate to only the Agreed Order [D.E. 84]. Debtor's counsel confirmed at the hearing that Debtor no longer challenged the Chapter 13 plans. [D.E. 158 at 5-10].

At the evidentiary hearing, the Court admitted Creditor's Exhibits 1 through 18;[2] the Court admitted Debtor's Exhibits A, B, C, and E; the Court denied Debtor's Exhibit D – Debtor's Ophthalmologist Records; and the Court accepted testimony from Debtor and Ms. Quesada.

Debtor graduated from Florida International University in 1995 with a bachelor's degree in nursing, and she earns a living as a high-income registered nurse, who works in the spinal cord unit with the Miami Veterans Administration.[3] [D.E. 158 at 26, 28]. Debtor testified that the last time she tendered a mortgage payment on her homestead property was in March of 2009, and she failed to make any payments since that time. [D.E. 158 at 16, 80-81]. Debtor testified that she never agreed to surrender her homestead property [D.E. 158 at 64, 72]; however, when confronted at hearing and in her deposition with *Debtor's Acknowledgement of Intent to Surrender Property dated May 18, 2015* (the "Acknowledgment"), Debtor testified that it was her signature on the document. [D.E. 158 at 85; D.E. 141 at 5-6, 56]. Debtor claimed that she signed the Acknowledgment without her glasses on, and she had a habit of signing legal documents without using her glasses. [D.E. 158 at 85-86, 64-65]. Debtor admitted that, once she received notice to surrender her homestead property, she did not call her attorneys because she was more concerned about the holiday season. [D.E. 158 at 127-28]. Rather than call Ms. Quesada, her bankruptcy attorney at the time, she hired a foreclosure attorney, Mr. Kenneth Trent, to represent her in state court. [D.E. 158 at 132-33]. As of the date of the hearing, Debtor admitted that she is still "fighting [her] foreclosure case" in state court. [D.E. 158 at 102]. In addition, Debtor gave conflicting statements and testimony on the following topics:

1) the number of investment properties she owned and when [D.E. 158 at 18, 33, 74];

2) which properties Debtor included in her bankruptcy [D.E. 158 at 74]; and

---

[2] During the evidentiary hearing, the Court admitted the exhibits presented in Creditor's Motion to Request Judicial Notice of Certain State Foreclosure Court Documents [D.E. 146] pursuant to Fed. R. Evid. 201, which renders Creditor's Motion to Request Judicial Notice moot.

[3] Under the confirmed chapter 13 plan and because of Ms. Quesada's representation, Debtor retains multiple major assets including: two investment properties, two automobiles (a 1967 Rolls-Royce Silver Shadow, worth approximately $80,000 according to Debtor, and a 2006 Jeep Cherokee), a TSP Account, and a 401(k) Plan. [D.E. 8 at 1-7; 158 at 34-35]. Provided Debtor receives her discharge, Debtor will discharge over $70,000 in unsecured debts [D.E. 8 at 14].

3) whether the children she cares for were her children, grandchildren, or the children of another person [D.E. 158 at 93; D.E. 140-1 at 1; D.E. 101 at 6].

Ms. Quesada testified that has been practicing bankruptcy law for approximately 15 years, 50-60% of her practice is focused on bankruptcy, and she is of counsel to the Adams Law Firm since 2002. [D.E. 158 at 136-37]. Ms. Quesada explained that the mortgage on Debtor's homestead property ballooned in 2012, mediation with Creditor failed in May 2015, Debtor rejected Creditor's loan workout proposal, and Debtor could not afford to cure and maintain. [D.E. 158 at 138-39, 141]. Considering these facts, Ms. Quesada testified that Debtor's only option, under the Bankruptcy Code, was to surrender the homestead property. [D.E. 158 at 143, 144]. Ms. Quesada testified that Debtor never complained or contacted the office regarding the surrender of the homestead property. [D.E. 158 at 143]. On December 15, 2016, Ms. Quesada attended this Court's chapter 13 day, received a copy of relevant case law from opposing counsel, and called Debtor. [D.E. 158 at 144-48]. During the telephonic call with Debtor, Ms. Quesada informed Debtor that her foreclosure attorney, Mr. Trent, had been suspended from practice and that the relevant law compelled Debtor to surrender the property. [D.E. 158 at 148-49]. Debtor stated that she wanted to buy additional time. [D.E. 158 at 149-50]. Ms. Quesada then successfully negotiated with Creditor's counsel for the sale of the homestead property to occur on or after April of 2017, which gave Debtor four additional months in the homestead property. *Id.*

## II. CONCLUSIONS OF LAW

"On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding . . . [if ] the judgment is void . . . or any other reason justifies that relief." Fed. R. Civ. P. 60(b)(4), (6), as incorporated by Fed. R. Bankr. P. 9024.[4] When a party challenges the validity of an order of the court under Fed. R. Civ. P. 60(b)(4), . . . the burden of proof rests with the movant. *Valdez v. Feltman (In re Worldwide Web Sys.)*, 328 F.3d 1291, 1298-99 (11th Cir. 2003) (citing

---

[4] The Court is unpersuaded by Debtor's case law as espoused in Debtor's Motions [D.E. 101, 147] because Debtor's counsel inappropriately applied Florida substantive state law and failed to cite any legal authority for why Florida substantive state law should apply.

*Hazen Research, Inc. v. Omega Minerals, Inc.*, 497 F.2d 151, 154 (5th Cir. 1974)). In the Southern District of Florida, the doctrine of finality requires agreements confirmed by court order to "remain undisturbed." *See In re Holland*, 70 B.R. 409, 412 (Bankr. S.D. Fla. 1987) ("'My attorney had no authority. Set aside the order and let's begin again.' The court responds, 'Nonsense.'").

The provisions contained in a confirmed chapter 13 plan "bind[] the debtor and each creditor." 11 U.S.C. § 1327(a). The chapter 13 plan provides for the disposition of each piece of property, including whether the debtor will surrender a property. "[T]he word 'surrender' in the bankruptcy code . . . requires that debtors relinquish their right to possess the property." *Failla v. Citibank, N.A. (In re Failla)*, 838 F.3d 1170, 1173-75 (11th Cir. 2016) (holding that once the property was surrendered in bankruptcy, the court had the authority to order the debtor to cease the state foreclosure defense). Although the *Failla* decision discusses a chapter 7 bankruptcy case, the U.S. Bankruptcy Courts for the Southern District of Florida have applied the reasoning of *Failla* to chapter 13 cases. *In re Calzadilla*, 534 B.R. 216 (Bankr. S.D. Fla. 2015) (holding that "the Court's MMM Procedures explicitly require 'surrender' and 'surrender' means that debtors cannot thereafter take any overt action to defend or impede the foreclosure"); *In re Lapeyre*, 544 B.R. 719 (Bankr. S.D. Fla. 2016); *In re Franklin*, No. 11-20340-RBR (Bankr. S.D. Fla. Aug. 22, 2016) (citing *Failla v. CitiBank, N.A.*, 542 B.R. 606 (S.D. Fla. 2015)). "A debtor who promises to surrender property in bankruptcy court and then, once his debts are discharged, breaks that promise by opposing a foreclosure action in state court has abused the bankruptcy process." *Failla*, 838 F.3d at 1179; Local Rule 1001-1(D); 11 U.S.C. § 105(a) (The bankruptcy court may issue any order "necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.").

In the instant case, Debtor has requested relief from the Agreed Order [D.E. 84], which compelled Debtor to surrender her homestead property. Fed. R. Civ. P. 60(b)(4), (6). Debtor argues that the Agreed Order [D.E. 84] is void because Debtor never agreed to surrender her property and never gave her bankruptcy counsel, Adams Law Firm and Ms. Quesada, authority to enter into the agreement. [D.E. 101 at 3; 147 at 3]. The burden to prove these claims rests upon Debtor, and after weighing the evidence, the

Court finds that Debtor has failed to carry the burden for the following reasons. *Valdez*, 328 F.3d at 1298-99 (citing *Hazen Research, Inc.*, 497 F.2d at 154).

First, Creditor, Ms. Quesada, and Debtor provided evidence that Debtor signed multiple retainer agreements giving the Adams Law Firm and Ms. Quesada authority to represent Debtor in her chapter 13 bankruptcy and mortgage modification mediation for the homestead property. [Creditor's Exhibit 3 and Debtor's Exhibit Composite A]. Creditor also submitted evidence that Debtor signed the Acknowledgment, which specifically stated that she agreed to surrender her homestead property. [D.E. 158 at 85; D.E. 141 at 5-6, 56]. Debtor admitted to signing the retainer agreements and the Acknowledgment. *Id.* Second, even if Debtor could prove that she never gave the Adams Law Firm and Ms. Quesada authority to enter into the Agreed Order [D.E. 84], in the Southern District of Florida, the argument that Debtor's attorneys did not have authority is insufficient to challenge the validity of an order. *See In re Holland*, 70 B.R. at 412. Third, although Debtor stated that she never intended to surrender her homestead property, Debtor failed to testify credibly. Debtor's testimony was inconsistent, and Debtor's excuse that she made a habit of signing legal documents, including the Acknowledgment, without her glasses is implausible for a person of Debtor's education and intelligence. [D.E. 158 at 18, 26, 28, 33, 74, 93, 85-86, 64-65; D.E. 140-1 at 1; D.E. 101 at 6]. Contra, the Court found that Ms. Quesada was a credible witness, and her representation during Debtor's chapter 13 bankruptcy was more than adequate. *See supra* note 3. Thus, the Court denies Debtor's Motion [D.E. 147], and the Agreed Order [D.E. 84] remains valid and enforceable. Further, Debtor admitted that she is still "fighting [her] foreclosure case" in state court. [D.E. 158 at 102].

Even if the Court declared the Agreed Order [D.E. 84] void and provided the requested relief, the Court is unable to relieve Debtor from the obligation to surrender the homestead property because Debtor remains bound by the confirmed chapter 13 plan, which provided that Debtor will surrender the homestead property.  11 U.S.C. § 1327(a); [D.E. 75 at 1, 71 at 1, 62 at 1, 61 at 1, 52 at 1, 49, 47 at 1]; *see supra* note 1. Debtor's continued opposition in the state foreclosure case violates Debtor's confirmed plan, the Agreed Order, and the Acknowledgement. "[T]he word 'surrender' in the bankruptcy code . . .

requires that debtors relinquish their right to possess the property," and Debtor has broken her promise to surrender her homestead property "by opposing a foreclosure action in state court." *Failla*, 838 F.3d at 1173-75, 1179. The Court finds that Debtor's opposition to the foreclosure in the state court action constitutes an "abuse[ of] the bankruptcy process." *Id.* Although the Court is entitled to issue any order "necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process," the Court will refrain from employing the inherent authority to sanction at this time. 11 U.S.C. § 105(a). Instead, the Court commands Debtor to comply with the Agreed Order [D.E. 84], relinquish possession of the homestead property, and cease all opposition in the state foreclosure action. *In re Calzadilla*, 534 B.R. at 216; *In re Lapeyre*, 544 B.R. at 719; *In re Franklin*, No. 11-20340-RBR (Bankr. S.D. Fla. Aug. 22, 2016) (citing *Failla*, 542 B.R. at 606)). If the Debtor fails to comply with this court order, then the Court may consider sanctions. 11 U.S.C. § 105(a).

Accordingly, it is

**ORDERED** as follows:

1. Creditor's Motion [D.E. 87] is **GRANTED**.

2. Debtor's Motion [D.E. 147] is **DENIED**.

3. Debtor and Debtor's Counsel shall comply with the Agreed Order [D.E. 84]. Debtor is **ORDERED** to surrender her interest in the homestead property located at 3601 N. 41 Court, Hollywood, Florida 33021-1944, and stop all opposition to the state court foreclosure action styled *Crossfire Financial Network, Inc. v. Nelvare R. Scott*, Case No. 2016-CA-012256, 17th Judicial Circuit, Broward County, Florida. The Debtor shall not seek to extend the sale date, oppose the sale, issuance of title, or entry of writ of possession.

4. **<u>Within 15 days from the date of this Order</u>**, the parties are **ORDERED** submit a consent final judgment of foreclosure in the State Foreclosure Action, with a sale date to occur at Creditor's convenience. A notice of compliance and a copy of the consent final judgment shall be filed with this Court as proof of Debtor's compliance with this Court's orders.

5. Creditor's Motion to Request Judicial Notice of Certain State Foreclosure Court

       Documents [D.E. 146] is **DENIED** as **MOOT**.

6. The Court retains jurisdiction to enforce the terms of this Order. If Debtor fails to strictly comply with the conditions set forth in this Order, the Court will consider all possible sanctions including monetary and non-monetary sanctions.

###

*The Clerks shall provide copies to:*
Creditor Crossfire Financial Network, Inc.
[Creditor Crossfire Financial Network, Inc. is directed to serve a conformed copy of this Order on all interested parties immediately upon receipt hereof and to file a certificate of service.]